UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:05-CR-57 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| EDWARD PARKS GWALTNEY ) | |

## **M E M O R A N D U M**

Defendant Edward Parks Gwaltney ("Defendant") filed a motion to suppress certain statements he made to Federal Bureau of Investigation ("FBI") special agents on October 27, 2004 (Court File No. 12) which was referred to United States Magistrate Judge Susan K. Lee to conduct an evidentiary hearing if necessary and make a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The magistrate judge held an evidentiary hearing on October 28, 2005, and on November 10, 2005, filed a report and recommendation ("R&R") that Defendant's motion be denied (Court File No. 18).

Defendant filed an objection to the report and recommendation and requested a *de novo* hearing, contending the magistrate's ruling rested on a credibility determination that is against the weight of the evidence presented, and was not in accord with the relevant caselaw (Court File No. 22). After carefully reviewing the transcript from the suppression hearing and considering both the filings of Defendant and the Government (Court File Nos. 12, 13, 15, 22, 23), the Court finds the magistrate's credibility determinations to be supported by the weight of the evidence and her legal analysis to be correct under the relevant law.

## I. Standard of Review

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

When reviewing a magistrate's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate's determinations recognizing a magistrate is in a better position to assess the credibility of witnesses he sees and hears. *United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *United States v. Ailemen*, 986 F. Supp. 1228 (N.D. Cal. 1997). Credibility determinations of the magistrate who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate's assessment. *Blizzard v. Quillen*, 579 F. Supp. 1446 (D. Del. 1984).

## II. Relevant Facts

FBI Special Agent Scott Barker and Defendant testified to the following during the suppression hearing, none of which is in dispute. On October 27, 2004, Special Agent Barker met with Chris Steger, an attorney who represents Girls Preparatory School ("GPS"), regarding the discovery of child pornography on a computer GPS had leased to Defendant (Court File No. 21, Transcript of October 28, 2005 Suppression Hearing ("Tr.") p. 10). Defendant had been a teacher at GPS for 16 years at that time (*id*. at 30). Special Agent Barker and Special Agent Bruce Harkleroad then went to the GPS campus and met with Steger and GPS headmaster Randy Tucker

(*id*. at 10-11).

Sometime midafternoon, after Special Agent Barker asked for Defendant to be brought to Tucker's office for an interview, GPS facilities manager Jim Kreis went to Defendant's office and told Defendant to report to Tucker's office without delay (*id*. at 11, 14-15, 20, 30-31). Special Agent Barker testified he and Special Agent Harkleroad interviewed Defendant in Tucker's office rather than elsewhere because it was the space offered for their use (*id*. at 21-22). When Defendant arrived at Tucker's office, Special Agents Barker and Harkleroad were sitting either on the same side of a table or at the end and on one side of the table, in the same seats they had occupied during their prior meeting with Seger and Tucker (*id*. at 22-23, *see also* Defense Exh. 1, 2 from Suppression Hearing). Special Agents Barker and Harkleroad showed Defendant their identification and possibly their badges, and introduced themselves (*id*. at 32-33). The special agents then directed Defendant to sit down without specifying where Defendant should sit, but the only available seat from which he could see both special agents was opposite the side of the table on which the special agents had been sitting (*id*. at 22-23, 35, 42, 43). From Defendant's perspective at the table, the office door was located to the left and some distance forward of the table, so Defendant was located slightly farther away from the door than Special Agents Barker and Harkleroad, from whose perspective the office door was to the right and some distance behind them (*see* Defense Exh. 1, 2 from Suppression Hearing, *see also* Tr. at 23-25).

Special Agents Barker and Harkleroad were the only ones in the office with Defendant during the interview (Tr. at 11, 13). Agent Harkleroad closed the door but did not lock it, or if it was locked, Defendant was not aware it was locked (*id*. at 13, 35, 39, 42). Defendant was not handcuffed or otherwise physically restricted in his freedom of movement (*id*. at 13-14). Special Agent Barker

3

explained to Defendant child pornography had been found on his computer and he "wanted to give him the opportunity, if he had an explanation for it, as to why there was child pornography on his computer" (*id*. at 12).  Defendant then told Special Agent Barker he "wanted to talk to [Special Agent Barker]" (*id*.).  Special Agent Barker testified the purpose of the questioning that day was not to extract a confession from Defendant, but rather "to get an explanation as to why [child pornography] was on his computer, if he had an explanation for it" (*id*. at 15).  Officers did not give *Miranda* warnings to Defendant at any time during this interview (*id*. at 12, 16, 36).  At the conclusion of the interview, Special Agent Barker thanked Defendant for his cooperation (*id*. at 26).  The interview lasted approximately 45 minutes (*id*. at 13, 26, 38).

The following facts are in dispute.  Special Agent Barker testified at the beginning of the interview, he told Defendant "he was not under arrest and regardless of what he told me at the interview he was not going to be arrested at the conclusion of the interview and that he was free to leave if he wanted to" (*id*. at 12, *see also id.* at 17-18).  Defendant testified "[f]rom my recollection, I did not hear him say [I was free to leave]" (*id*. at 36).

**III.    Analysis**

Defendant asserts he was not informed of his right to remain silent or his right to counsel during the interview on October 27, 2004 as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), thus his Fifth Amendment rights were violated and all statements elicited from him during the interview must be suppressed (Court File No. 12).

Statements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has first been told of the constitutional right against

4

self-incrimination and has validly waived this right. *Miranda,* 384 U.S. at 478-79. The Government has conceded, and the Court expressly **ADOPTS** and **ACCEPTS** the magistrate judge's finding Special Agents Barker and Harkleroad's questioning of Defendant constitutes "interrogation" for *Miranda* purposes (R&R at 6). *See Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297 (1980) ("The special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation," defined as "express questioning or its functional equivalent."). Thus the only legal issue for the Court to determine is whether he was in custody at the time he was interrogated.

A defendant is in custody when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Knox*, 839 F.2d 285, 291 (6th Cir. 1988) (*quoting California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520, 77 L. Ed. 2d 1275 (1983) (per curiam) (internal quotation marks omitted)). The Court determines whether or not a defendant is in custody by considering "the objective circumstances of the interrogation," not "the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* (*quoting Stansbury v. California*, 511 U.S. 318, 323, 128 L. Ed. 2d 293, 114 S. Ct. 1526 (1994)). The key to this determination is "how a reasonable man in the suspect's position would have understood his situation." *Id.* (*quoting Berkemer v. McCarty*, 468 U.S. 420, 442, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984)).

In this custodial analysis, a court should consider:

(1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . [or]

acquiesced to their requests to answer some questions.

*United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003) (*quoting United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000)).

Defendant's objections to the magistrate judge's report and recommendation focus mainly on the magistrate judge's application of the facts of this case to the law outlined above, but also involve the magistrate judge's credibility determination in favor of Special Agent Barker on two contested issues of fact.

### A. *Swanson* Factors to Determine Whether Interrogation Was "Custodial"

The Court will analyze each factor enumerated in *Swanson* separately.

#### 1. Purpose of the Questioning

Defendant argues the purpose of the questioning here was to elicit a confession from him. The Government states, and Special Agent Barker testified, the purpose of the questioning that day was not to extract a confession, but "to get an explanation as to why [child pornography] was on his computer, if he had an explanation for it" (Tr. at 15). No matter how the purpose of the questioning is characterized, it is not disputed the purpose was to get to the bottom of the fact there was child pornography on the computer leased to Defendant, and in response to questions on that subject, it was possible Defendant would make incriminating statements. This factor favors a finding of custody but does not weigh heavily in the Court's analysis. *See, e.g., United States v. Thomas*, 142 Fed.Appx. 896, 900 (6th Cir. 2005) (holding interrogation not custodial, noting questioning about whether defendant had a gun permit for gun found near him was "benign and unintrusive").

#### 2. Place of Questioning

Defendant next argues the place of questioning, his supervisor's office during the workday,

6

weighs in favor of a finding he was in custody because it rendered the questioning particularly "intimidating" and "oppressive," and was an environment that aided the special agents in "extracting a confession" (Court File No. 22 at 11-12). Special Agent Barker testified he and Special Agent Harkleroad interviewed Defendant in the headmaster's office rather than elsewhere simply because it was the space offered for their use to interview Defendant (Tr. at 21-22).

As noted by the magistrate judge in her report and recommendation, every case Defendant cites in support of the proposition an interview at a defendant's workplace is more likely to be custodial than an interview elsewhere was decided by a court outside the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") (Court File No. 22 at 10-11; Court File No. 13, n. 1). Further, Defendant fails to respond in any of his briefs to the relevant Sixth Circuit cases on this point, all of which hold this fact does not weigh in favor of a finding of custody, the magistrate judge analyzed in full in her report and recommendation (*see* R&R at 9-11). After reviewing both the cases upon which Defendant relies and those decided by the Sixth Circuit this Court is bound to follow, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's extensive analysis on this point and concludes the fact Defendant was questioned at work does not weigh in favor of a finding he was in custody during that questioning.

### 3. Length of Questioning

Defendant argues the length of questioning, approximately 45 minutes, weighs in favor of a finding he was in custody. Defendant again cites cases from courts outside the Sixth Circuit in support of this proposition, but in this circuit, a 45-minute interrogation is not so long as to weigh in favor of a finding of custody. *See Biros v. Bagley*, 422 F.3d 379, 389-90 (6th Cir. 2005) (35-minute interrogation not custodial); *Crossley*, 224 F.3d at 862 (interview lasting "less than an hour"

7

not custodial); *Singleton v. Carter*, 74 Fed.Appx. 536, 541 (6th Cir. 2003) (35 minutes of questioning not custodial); *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (one-hour-and-35-minute interview not custodial).

The Court would note it is not persuaded by Defendant's argument this factor weighs in favor of custody because the agents were in control of the length of questioning and Defendant could not have known at the outset how long the questioning would last. This will be true in any case in which agents control the questioning, and cannot be said to weigh for or against a finding of custody.

    **4.    Other Indicia of Voluntariness**

        **a.    Magistrate Judge's Credibility Determination About Special Agent Barker's Informing Defendant He Was Free to Leave**

Defendant requests the Court reject the magistrate judge's finding Special Agent Barker's testimony he told Defendant he was free to leave at the beginning of the interview was credible (R&R at 9). However, Defendant does not give any reason the Court should reject the findings the magistrate judge made after hearing this testimony in person, other than that it conflicts with Defendant's testimony he did not remember hearing Special Agent Barker tell him he was free to leave. As noted above, the Court may accept or reject the magistrate's determinations recognizing a magistrate is in a better position to assess the credibility of witnesses he sees and hears. *Raddatz*, 447 U.S. 667; *Ailemen*, 986 F. Supp. 1228, but the credibility determinations of the magistrate who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate's assessment. *Blizzard*, 579 F. Supp. 1446.

The Court finds only support for the magistrate judge's credibility determination in the record. First, Special Agent Barker testified consistently about the statement Defendant was free

8

to leave twice during the suppression hearing (*see* Tr. at 12, 17-18). Additionally, within several days after the interview, Special Agents Barker and Harkleroad prepared an FBI report summarizing the interview, including the statement "[Defendant] was advised he was not under arrest and that he would not be arrested at the conclusion of the interview, and that he was free to leave" (Government Exh. 1 from Suppression Hearing). This contemporaneous report corroborates Special Agent Barker's testimony. Further, Defendant did not testify he was certain Special Agent Barker did not make any such statement, he merely stated "[f]rom my recollection, I did not hear him say that" (*id*. at 36). The Court finds the magistrate judge's credibility determination is supported by the testimony from the suppression hearing as well as the documentary evidence submitted during that hearing. In the absence of any reason to discredit this testimony, the Court will **ACCEPT** and **ADOPT** the magistrate judge's credibility determination Special Agent Barker told Defendant he was free to leave.

     **b.**  **Magistrate Judge's Determination About Defendant's Actual Freedom to Leave**

The Magistrate Judge also made a determination Defendant actually was free to leave the interview, in that his exit from the room was in no way physically hampered by the seating arrangement (R&R at 9). Defendant argues the fact during the interview he was "directed" to sit behind a conference table, further from the door than the special agents, and would have had to walk past the special agents to exit the interview supports a finding the interview was custodial (Court File No. 22 at 13). Defendant objects to the magistrate judge's finding Defendant sat where he did "based on the available seats" rather than being forced by the special agents to sit in a particular seat that hindered his exit. Defendant's own testimony supports the magistrate judge's finding Defendant, rather than the special agents, chose his seat at the table from several that were

9

available based on his ability to see both special agents from that seat (Tr. at 22-23, 35, 42, 43). The record further supports the magistrate judge's finding Defendant was not physically hampered from exiting the office by the conference table or the special agents' positions near the door (Defense Exh. 1, 2 from Suppression Hearing). Therefore the Court **ACCEPTS** and **ADOPTS** the magistrate judge's finding on this matter.

Further, the Court notes Defendant testified he did not feel "at all" free to leave the interview, and also would not have felt free to leave "[i]f it had been the headmaster and not two FBI agents between me and the door . . . [b]ecause [the headmaster is] the ultimate authority in my career at that point" (Tr. at 37). Defendant also testified he felt "significantly more" restrained from leaving the interview because FBI agents, rather than Tucker, were interviewing him (*id.* at 37). Defendant in his objections points to this testimony as support for a finding special agents used the "trappings of the Headmaster's office" to secure his continued presence and extract a confession, rendering the interview custodial (Court File No. 22 at 11-12). This testimony indicates Defendant had a *subjective* belief he was not free to leave the interview because the headmaster in whose office he was being interviewed was in control of his career, and leaving that office and the interview would harm his career. However, this is not evidence that a *reasonable person* in this situation would not have felt he was physically free to leave the interview, and this is the determination the Court must make in its custodial analysis. *See Knox*, 839 F.2d at 291. The Court further **ACCEPTS** and **ADOPTS** the magistrate judge's analysis on this point (R&R at 9-10).

        **c.**        **Defendant Informed He Was Not Under Arrest, Was Free to Leave and Had Freedom of Movement and Freedom to Leave**

**Interview**

The Sixth Circuit has held a statement by a law enforcement officer to a suspect he is not under arrest, in conjunction with freedom of movement, is "compelling evidence" a suspect was not "in custody." *United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998) (*citing United States v. Sivils*, 960 F.2d 587, 598 (6th Cir.), *cert. denied*, 506 U.S. 843, 121 L. Ed. 2d 84, 113 S. Ct. 130 (1992) (suspect not in custody where he was told he was not under arrest and would not be placed under arrest at the conclusion of the interview, was not physically restrained, and remained free to move about during the interview); *see also Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711; 50 L. Ed. 2d 714 (1977) (suspect not in custody when informed he is not under arrest, is not restrained from leaving during questioning, is interviewed for half an hour, and leaves unhindered at the completion of the interview); *United States v. Sivils*, 960 F.2d 587, 598 (6th Cir. 1992) (defendant not in custody where he was informed before questioning he was not under arrest and would not be arrested at conclusion of interview, was not physically restrained and was allowed to move about freely during interview).

Further, the Sixth Circuit has held a statement to a defendant he is free to leave, combined with the factors above, indicates the interview is not custodial. *See Swanson*, 341 F.3d at 530 (defendant not in custody where he was told he would be free to leave as soon as his name was cleared through the Law Enforcement Information Network, possessed unrestrained freedom of movement during questioning, and was told he was not under arrest and had no obligation to speak with officers); *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir.) (defendants not in custody where they were told they were not under arrest and were free to leave), *cert. denied*, 498 U.S. 840, 111 S. Ct. 116, 112 L. Ed. 2d (1990).

11

Here, the Court has found Special Agent Barker informed Defendant "he was not under arrest and regardless of what he told me at the interview he was not going to be arrested at the conclusion of the interview and that he was free to leave if he wanted to" (*id*. at 12, *see also id.* at 17-18). Further, it is undisputed Defendant was not handcuffed or otherwise physically restrained in his movement during the interview (Tr. at 13-14). The Court also has found Defendant was not prevented by the seating arrangement from actually leaving the office during the interview. These factors all weigh heavily in the Court's analysis and each indicates the interview was not custodial.

### d. Defendant Initiated Contact With Police

This factor, which would weigh against a finding the interrogation was custodial, is not present in this case.

### e Defendant Acquiesced to Requests to Answer Some Questions

Defendant has not submitted any evidence he acquiesced to answer some questions but refused to answer others; from the testimony at the suppression hearing it appears he answered all questions he was asked. After Special Agent Barker explained to Defendant child pornography had been found on his computer and asked Defendant for an explanation, Defendant told Special Agent Barker he "wanted to talk to [Special Agent Barker]" (Tr. at 12). This factor weighs in favor of a finding the interview was not custodial. *See Swanson*, 341 F.3d at 530 (noting defendant's cooperation and willingness to talk with agent before finding he was not in custody based on sum of factors).

### B. Totality of the Circumstances

The Sixth Circuit employs a totality of the circumstances approach, considering all the

factors discussed above, when deciding whether or not a suspect was in custody during an interrogation. *Sivils*, 960 F.2d at 597. After examining the totality of the circumstances outlined above and considering "the objective circumstances of the interrogation," not "the subjective views harbored by either the interrogating officers or the person being questioned" the Court agrees with the magistrate judge a reasonable person in Defendant's situation would have understood himself to be free to leave the interview. *Knox*, 839 F.2d at 291. Based on this and the other circumstances outlined above, the Court does not find there was a "restraint on freedom of movement of the degree associated with a formal arrest" such that this interview was "custodial" under *Miranda*. *Knox*, 839 F.2d at 291. Therefore, because this interview was not "custodial," Defendant's rights under the Fifth Amendment were not violated on October 27, 2004 when the officers did not advise him of those rights and the statements he made during the interview need not be excluded.

## IV. Conclusion

For the reasons stated above, after carefully reviewing the transcript from the suppression hearing and the documents presented at that hearing, the Court has determined the magistrate judge's credibility determinations are supported by the weight of the evidence and her legal analysis is correct under the relevant law. Following those findings, the Court **ACCEPTS** and **ADOPTS** the magistrate's determination Defendant's statements to special agents on October 27, 2004 need not be suppressed.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

13